# United States Court of Appeals
## For the First Circuit

No. 17-1892

JULIO H. REYES,

Petitioner,

v.

JEFFERSON B. SESSIONS, III,
ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Stahl, and Kayatta,
Circuit Judges.

Jonathan Ng, with whom Robert Ley and Law Office of Johanna Herrero were on brief, for petitioner.

Yedidya Cohen, Trial Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, with whom Chad A. Readler, Acting Assistant Attorney General, and Anthony C. Payne, Assistant Director, Office of Immigration Litigation, were on brief, for respondent.

March 29, 2018

**LYNCH**, **Circuit Judge**.  Julio H. Reyes challenges the Board of Immigration Appeals' ("BIA") denial of his motion to reopen for being untimely and its decision not to reopen sua sponte.  The BIA found that Reyes had submitted his motion to reopen long after the ninety-day limit and did not show that he fit within an exception to that limit, and did not even attempt to argue to the BIA that he did.  The BIA did not abuse its discretion, so we deny that portion of his petition.  The BIA also determined that sua sponte reopening was unwarranted.  We dismiss Reyes's challenge of that decision for lack of jurisdiction.

I.

Reyes, a native and citizen of El Salvador, entered the United States in 1987 without being admitted or paroled after inspection by an immigration officer.  Between 1991 and 2011, Reyes was arraigned on twenty-six different criminal charges.  These charges included: assault and battery with a dangerous weapon in 1991; disorderly conduct in 1992; assault and battery in 1993; receiving stolen property in 1993; violation of a restraining order and threatening to commit a crime in 1996, for an altercation involving a woman he said was his girlfriend at the time; buying or receiving a stolen motor vehicle in 1997; assault and battery on a police officer and resisting arrest in 1998; operating a vehicle under the influence of alcohol and leaving the scene of an accident in 2001; assault and battery with a dangerous weapon and

- 2 -

threatening to commit a crime in 2003, for allegedly beating his girlfriend; intimidation of a witness in 2003, for allegedly preventing his girlfriend from testifying regarding the 2003 assault and battery charge; assault and battery in 2008, for allegedly hitting a woman he was dating and who is the mother of his children; possessing an open container of alcohol in a motor vehicle in 2009; and assault and battery in 2011, again for allegedly beating the mother of his children.

At least two of the charges against Reyes led to convictions. In 1993, Reyes was convicted of assault and battery, in violation of Mass. Gen. Laws ch. 265 § 13A. In 1997, he pleaded guilty to buying or receiving a stolen motor vehicle, in violation of Mass. Gen. Laws ch. 266 § 28.

In 2007, the Department of Homeland Security initiated removal proceedings against Reyes, charging that Reyes was present in the United States without being admitted or inspected. Reyes conceded that he was removable and applied for special rule cancellation of removal under the Nicaraguan Adjustment and Central American Relief Act of 1997 ("NACARA"), which provides the Attorney General discretion to cancel removal if certain conditions are met.[1] 8 C.F.R. § 1240.66(b). At a hearing before

---

[1] To be eligible for this relief, a person must, inter alia, be inadmissible or deportable, have been continuously present in the United States for a certain period of time, be of good moral character during his continuous presence in the United

the Immigration Judge ("IJ"), Reyes testified that returning to El Salvador would create a hardship because he had negative memories from El Salvador's civil war, he would not be able to find employment there, he financially supported his three United States citizen children, and he provided care to his mother, who lives in the United States.

The IJ, for multiple separate reasons, denied Reyes's application and ordered him removed. First, the IJ determined that Reyes's 1997 conviction for receiving a stolen vehicle was a crime involving moral turpitude and, as a result, applied the heightened standard that Reyes must show his removal would result in "exceptional and extremely unusual" hardship. The IJ found that Reyes did not satisfy that standard because the hardship Reyes had identified was not "substantially different from, or beyond, that which would normally be expected from the deportation of an alien with close family members here." Second, the IJ determined that Reyes had failed to show that he had been of good moral character during his time in the United States. Third, and

_____

States, and demonstrate a certain level of hardship. 8 C.F.R. § 1240.66. A person who has not committed a crime involving moral turpitude must show that he has been continuously present in the United States for seven years and that returning to his home country would cause "extreme hardship." Id. § 1240.66(b). A person who has committed such a crime must show he has been continuously present in the United States for ten years following that crime and that returning to his home country would result in "exceptional and extremely unusual hardship." Id. § 1240.66(c).

- 4 -

independently, the IJ denied Reyes's motion as a matter of discretion because Reyes had been arraigned on twenty-six criminal charges during his time in the United States. The IJ stated that "[s]uch a criminal record is sufficient to . . . determine that [Reyes] would not warrant a favorable exercise of discretion."

The BIA affirmed on October 9, 2012. It agreed with the IJ that Reyes had failed to show that his removal would result in exceptional and extremely unusual hardship. It separately concluded that the IJ was correct to deny cancellation of removal as a matter of discretion "[f]or the reasons thoroughly discussed by the [IJ]." The BIA did not reach the good moral character issue. Reyes did not move to reopen within the ninety-day period.

Despite the 2012 final order of removal, Reyes remained in the United States. On February 23, 2017, Reyes filed a motion to reopen and an accompanying emergency stay of removal. His motion to reopen alleged that, on January 9, 2017, Reyes's 1993 conviction for assault and battery was vacated on the grounds that his counsel at the time had failed to warn him of the immigration consequences of pleading guilty and that he had not been provided an interpreter. Based on that vacatur, Reyes argued that he could now meet the requirements for special rule cancellation of removal under NACARA. At no point did Reyes, who was represented by counsel, attempt to justify the years-long delay between the final order of removal and his effort to vacate his prior conviction.

DHS responded on March 7, 2017, asserting that the vacatur did not change any facet of the IJ's and BIA's analyses. In its discussion of the NACARA hardship standard, DHS pointed out that the application of the heightened standard under NACARA was based on Reyes's 1997 conviction for buying or receiving a stolen motor vehicle, not the assault and battery conviction that had been vacated.

Reyes went back to the state court and argued that his conviction for buying or receiving a stolen motor vehicle should be vacated, again due to Reyes's allegation that his counsel had not warned him of the immigration consequences of a guilty plea. The state court vacated the conviction on July 27, 2017. Reyes filed his response to DHS's opposition to his motion to reopen the next day, notifying the BIA of the July 27, 2017 vacatur as part of that filing.

The BIA denied Reyes's motion on August 11, 2017. First, the BIA determined that Reyes's motion to reopen was untimely. Motions to reopen must be filed within ninety days of a final order of removal, and Reyes had waited more than four years. The BIA found that Reyes "ha[d] not shown that the late filing of his motion to reopen is excused under any exception" and denied the motion as a result. Second, the BIA declined to reopen sua sponte on the ground that Reyes had failed to show that the vacaturs of the two criminal convictions would have led to a different outcome.

The BIA explained that, even if the vacaturs might help Reyes on the good moral character and hardship requirements, they would not impact the IJ's and BIA's decisions to deny cancellation of removal as a matter of discretion. The BIA explained that the IJ had found that Reyes's history of arrests was sufficient to deny cancellation of removal as a matter of discretion, and the BIA's 2012 decision had adopted that reasoning. Because the two vacaturs did not affect that independent ground for denying cancellation of removal, sua sponte reopening was unwarranted. For the same reason, the BIA determined that Reyes's motion to reopen would have failed even if it had been timely.

## II.

Reyes's petition for review argues that the BIA erred by denying his motion to reopen. Where we have jurisdiction, we review the BIA's denial of a motion to reopen for abuse of discretion. Sánchez-Romero v. Sessions, 865 F.3d 43, 45 (1st Cir. 2017). A motion to reopen generally must be filed within ninety days of a final order of removal. 8 U.S.C. § 1229a(c)(7)(C)(i). Here, the BIA entered a final order of removal on October 9, 2012, and Reyes did not file his motion to reopen until February 23, 2017. His filings did not provide the BIA any reason why his submission should be considered timely. Consequently, the BIA held that Reyes had failed to justify the delay and dismissed his

- 7 -

motion as untimely.  That ruling can hardly be an abuse of discretion.[2]

## III.

Reyes also challenges the BIA's decision not to reopen sua sponte.  This circuit has long held that "sua sponte authority is committed to the unbridled discretion of the BIA, and the courts lack jurisdiction to review that judgment."  Charuc v. Holder, 737 F.3d 113, 115 (1st Cir. 2013) (quoting Matos-Santana v. Holder, 660 F.3d 91, 94 (1st Cir. 2011)).  Reyes argues that we have jurisdiction under 8 U.S.C. § 1252(a)(2)(D) because his petition raises constitutional issues and questions of law.

This court has not determined whether 8 U.S.C. § 1252(a)(2)(D) provides courts of appeals with jurisdiction to review, under certain circumstances, the BIA's sua sponte decision not to reopen.  See Matias v. Sessions, 871 F.3d 65, 69 (1st Cir. 2017).  We need not decide that issue here.  Section 1252(a)(2)(D) only arguably applies to a petitioner's constitutional or legal challenges if they are colorable, see Ayeni v. Holder, 617 F.3d

---

[2]    Reyes argues before this court that his motion to reopen should be considered timely because the two vacaturs amount to a "changed and exceptional circumstance," and the motion to reopen was filed within ninety days of the vacaturs.  Reyes did not make this argument before the BIA, so it is unexhausted and waived. See Molina De Massenet v. Gonzales, 485 F.3d 661, 664 (1st Cir. 2007).  Even if the argument were before us, we note that he does not explain why he waited years to attempt to vacate his convictions, including years after the immigration consequences had been made clear by the BIA's final order of removal in 2012.

67, 71 (1st Cir. 2010) (citing Elysee v. Gonzales, 437 F.3d 221, 223 (1st Cir. 2006)), and Reyes's are not.

Reyes argues that the BIA's decision not to reopen sua sponte denied Reyes due process and so raises a constitutional claim. That is plainly not so, for a number of reasons, and we give only one. A due process claim can only succeed if Reyes has a "cognizable liberty interest," Matias, 871 F.3d at 72 (quoting Mejia-Orellana v. Gonzales, 502 F.3d 13, 17 (1st Cir. 2007)), and he does not. The BIA's exercise of its "purely discretionary" sua sponte authority "does not create a cognizable liberty interest."[3] Id.

Reyes argues that he asserts a colorable question of law because he alleges that the BIA "impermissibly departed from a consistent pattern of administrative decisions rendered in similar cases." The BIA's decision here was completely consistent with its precedent. Reyes cites only cases in which the BIA chose to exercise its discretion to reopen sua sponte where the underlying charge of removal was based solely on a criminal conviction that had been vacated. See, e.g., In Re: Urquilla-Morales, 2005 WL 3709278, at *1 (B.I.A. 2005). Here, as the BIA explained, the IJ made an independent discretionary decision, which the BIA

---

[3] Reyes argues that the application of the exceptional and extremely unusual hardship standard amounted to a violation of his right to due process. That argument is not colorable for the same reason that his other due process argument is not colorable.

affirmed, not to grant special rule cancellation of removal, and that decision was based on Reyes's twenty-six criminal charges, not his two convictions.

## IV.

Reyes's petition for review is denied as to his challenge to the BIA's determination that his motion to reopen was untimely and dismissed for lack of jurisdiction as to his challenge to the BIA's decision to not exercise its sua sponte authority to reopen.